UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                        )
                                        )
BRIAN TRAVERS,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )    C.A. No. 18-562 WES
                                        )
COTIVITI, LLC,                          )
                                        )
          Defendant.                    )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Plaintiff Brian Travers brings this suit claiming his former employer, Defendant Cotiviti, LLC, ("Cotiviti") illegally fired him because of his age.  Before the Court is Defendant's Motion for Summary Judgment, ECF No. 29, and dueling motions to strike portions of the summary judgment record, ECF Nos. 34, 41.  For the following reasons, Plaintiff's Motion to Strike Statement of Undisputed Facts ("Pl.'s Mot. Strike"), ECF No. 34, is DENIED, and Defendant's Motion to Strike Statement of Undisputed Facts ("Def.'s Mot. Strike"), ECF No. 41, is GRANTED.  Defendant's Motion for Summary Judgment, ECF No. 29, is GRANTED in part and DENIED in part.

I.   BACKGROUND

Cotiviti audits financial transactions between its clients and their vendors, ensuring its clients receive the full benefit of the deductions and other incentives built into their contracts. Def.'s Statement Undisp. Facts ("Def.'s SUF") ¶¶ 1-2, ECF No. 30. As payment for its services, Cotiviti retains a percentage of the money it recovers.  Id. ¶ 6.  The audits are conducted by teams, subject to the following reporting hierarchy:  Auditors report to Audit Managers, who report to Audit Directors, who report to a Regional Vice President of Audit Operations.  Id. ¶ 7-8.  Mr. Travers started at Cotiviti as an Auditor in 2001.  Id. ¶ 14.  By 2009, he worked his way up the ranks to the position of Audit Director.  Id. ¶ 15.

As an Audit Director, Mr. Travers was assigned specific client accounts and had five "direct reports" working under his supervision.  Id. ¶¶ 15, 40.  From 2010 to 2017, the revenue generated by those accounts decreased 73 percent.  Id. ¶¶ 17-19.[1] This reduction appears to have been caused primarily by terminations of contracts with Mr. Travers' accounts, although revenue generated by some of the remaining accounts also declined. Id. ¶¶ 17-21.  Indeed, during this time, Cotiviti's revenue decreased across the Northeast region, leading Cotiviti's

---

[1] As discussed, infra, III.A, Plaintiff has unsuccessfully moved to strike these paragraphs from consideration.

leadership to close its regional office in Brockton, Massachusetts, and redistribute the remaining clients to other regional offices.  Id. ¶ 22-27.

In this reorganization, Plaintiff began reporting to a new Regional Vice President, Joshua Weiser.  Id. ¶ 27.  In 2017, shortly after the Brockton office closed, senior leadership at Cotiviti contacted Mr. Weiser and informed him that Mr. Travers' position was being eliminated.  Id. ¶ 28.  By 2019, Mr. Travers' whole team had either retired or been terminated as Cotiviti continued to reduce its workforce.  Def.'s Resp. Pl.'s Statement Additional Undisp. Facts, Ex. A., Dep. of Joshua Weiser at 31, ECF No. 42-1.

Mr. Weiser delivered the news of Mr. Travers' termination in the cafeteria of CVS's corporate headquarters, after a client meeting.  Def.'s SUF ¶¶ 31-32.  He told Plaintiff that he was not being terminated "for cause," but because his accounts did not produce enough revenue.  Pl.'s Statement Additional Undisp. Facts ("Pl.'s SAUF") ¶ 75, ECF No. 35.  Plaintiff responded to the news of his termination by asking about other positions to which he might be reassigned.  Id. ¶ 62.  Mr. Weiser replied, "No, that doesn't work out."[2]  Id. ¶ 63.  Mr. Travers informed Mr. Weiser

---

[2] While Mr. Weiser's deposition testimony is less clear than Plaintiff's account of this conversation's precise wording, Mr. Weiser's recollection is not inconsistent with Plaintiff's version.  See Def.'s Resp. Pl.'s Statement Additional Undisp.

that he was terminating the oldest and most senior director in his region.  Id. ¶ 67.  After a brief discussion of whether another Cotiviti employee was or was not older than Mr. Travers, the following exchange occurred:

> Mr. Travers: This can't end here
>
> Mr. Weiser: Well, what, like a lawsuit?
>
> Mr. Travers: Well, I'll do what I have to do.
>
> Mr. Weiser: Well, others will be interested in that, too.

See Pl.'s SAUF ¶¶ 70-72.

This denied request to transfer is central to Mr. Travers' claim.  He alleges that Cotiviti maintained an informal policy of offering transfers to Audit Directors and Audit Managers rather than simply terminating them.  Pl.'s Mem. Law Supp. Obj. Def.'s Mot. Summ. J. ("Pl.'s Obj.") 3-5, 7-9, ECF No. 32-1.  To establish the existence of this purported policy, he points to ten Audit Directors and Managers who he alleges were transferred to different positions within Cotiviti.  Pl.'s SAUF ¶ 87.  Defendants contest both whether all ten of these individuals were actually transferred, and whether any of them were transferred in comparable circumstances.  See Def.'s Resp. Pl.'s Statement Additional Undisp. Facts 3-10, ECF No. 42.  It remains undisputed, however,

---

Facts, Ex A, Weiser Depo. 86-87, ECF No. 42-1. In any event, Defendant has not challenged the paragraphs in Plaintiff's undisputed facts on which this exchange is based, so the Court accepts them as true for the purpose of this motion.

that all ten are over forty years old, and seven are actually older than Plaintiff.  Def.'s SUF ¶ 36.

II.  LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Joseph v. Lincare, Inc., 989 F.3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).  A factual dispute is genuine when it "must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Id. (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). "Although the record is construed in a light most favorable to the non-moving party, the Court need not consider 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" Lima v. City of E. Providence, 17 F.4th 202, 206 (1st Cir. 2021) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)).

III. DISCUSSION

   A.   Motions to Strike

      As  an  initial  matter,  both  parties  have  filed  motions  to
strike  facts  proffered  by  their  opponents  as  improper  for
consideration  at  summary  judgment.   See  Pl.'s  Mot.  Strike  1-2;
Def.'s  Mot.  Strike  1-3;  Fed.  R.  Civ.  P.  56(c)(2).   "In  deciding  a
motion  for  summary  judgment,  'a  court  may  take  into  account  any
material  that  would  be  admissible  or  usable  at  trial  .  .  .  [but]
inadmissible  evidence  may  not  be  considered.'"   Cremaldi v. Wells
Fargo  Bank,  N.A.,  No.  13-11767-MLW,  2017  WL  1190377,  at  *3  (D.
Mass.  Mar.  30,  2017)(quoting  Facey v. Dickhaut,  91  F.  Supp.  3d  12,
19  (D.  Mass.  2014).   "Although  the  substance  or  content  of  the
evidence  submitted  to  support  or  dispute  a  fact  on  summary  judgment
must  be  admissible.  .  .  ,  the  material  may  be  presented  in  a  form
that  would  not,  in  itself,  be  admissible  at  trial."   Lee v.
Offshore  Logistical & Transp., L.L.C.,  859  F.3d  353,  355  (5th  Cir.
2017)  (quoting  11  James  Wm.  Moore  et  al.,  Moore's  Federal  Practice
§  56.91  (2017);  see  also  Fraternal  Order  of  Police,  Lodge  1  v.
City  of  Camden,  842  F.3d  231,  238  (3d  Cir.  2016);  Humphreys  &
Partners  Architects,  L.P.  v.  Lessard  Design,  Inc.,  790  F.3d  532,
538  (4th  Cir.  2015)  (quoting  11  Moore's  Federal  practice  §  56.92[2]
(3d  ed.  2015)  (recognizing  that  a  "court  may  consider  .  .  .  the
content  or  substance  of  otherwise  inadmissible  materials  where  the

6

'the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form.'").

Plaintiff moves to strike paragraphs 17-19 of Defendant's Statement of Undisputed Facts, which attest to a significant drop in the revenue of Mr. Travers' accounts between 2010 and 2017. Pl.'s Mot. Strike 1-2.   Those paragraphs are supported by a document produced by Cotiviti in discovery showing the revenue of Mr. Travers' clients, year over year.   See Def.'s SUF ¶¶ 17-19; Def.'s SUF, Ex. B, , ECF No. 30-2.   The document is introduced as an exhibit to an affidavit from Cotiviti's counsel.   Def.'s SUF, Ex. B.   Plaintiff argues the exhibit would be inadmissible at trial because the affidavit is not based on personal knowledge, and the exhibit therefore lacks foundation for authentication and admission.   Pl.'s Mot. Strike 2.

This argument is unavailing.   While obviously Cotiviti's attorney could not personally authenticate this document at trial, Cotiviti has offered to produce an affidavit from someone at the company familiar with its record keeping systems and the document in question.   See Def.'s Opp'n Pl.'s Mot. Strike Portions of Aff. Eric B. Mack and Portions of Def.'s SUF 4-5, ECF No. 39.   Defendant has therefore shown it will be possible to put the information into an admissible form for trial.   See Fraternal Order of Police, Lodge 1, 842 F.3d at 238 (holding that a summary judgment "[t]he proponent need only 'explain the admissible form that is

7

anticipated'")(quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment).  Plaintiff's Motion to Strike is therefore DENIED.

For its part, Cotiviti moves to strike paragraphs 118-119 of the Plaintiff's Statement of Additional Undisputed Facts, arguing they rest on inadmissible hearsay.  Def.'s Mot. Strike 1-3.  The contested paragraphs recount an incident where Plaintiff's former supervisor, John Kennedy, allegedly told him that two other senior Cotiviti employees, including Mr. Weiser, previously made comments indicative of age discrimination.[3]  Pl.'s SAUF ¶¶ 118-19. Plaintiff failed to oppose the Motion to Strike.[4]

Plaintiff's testimony as to what Mr. Kennedy said that Mr. Weiser said, is double hearsay -- a purported out of court statement offered for its truth, namely that Mr. Wieser had

---

[3] The contested paragraphs read as follows:

118. In or about 2014/2015, Mr. Kennedy told the Plaintiff that Mr. Weiser and another Audit Director, Joel Suave, wanted Dave Engen transferred from the Midwest region. Plaintiff's Dep. Tr. 22:3-25.

119. Mr. Kennedy told the Plaintiff that Mr. Weiser and Mr. Suave wanted Dave Engen transferred out because he is "too old." Id. 22:6-11.

Pl.'s Statement of Additional Undisp. Facts ¶¶ 118-19, ECF No. 35.

[4] Plaintiff filed two motions to extend the time for filing an Opposition to Defendant's Motion to Strike, which were granted, but the opposition was never filed.  See Aug. 23, 2021 Text Order; Sept. 16, 2021 Text Order.

previously acted on or held a discriminatory animus towards older employees.   The burden is on the party seeking to rely on information to show either that is admissible or that it could be offered in an admissible form.   Martinez v. Novo Nordisk Inc., 992 F.3d 12, 18 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(c)(2)) (hearsay generally not considered at summary judgment, "absent a showing that the statements can 'be presented in a form that would be admissible in evidence.'").   Plaintiff has made no such showing.[5]   Defendant's Motion to Strike is therefore GRANTED.

B. Age Discrimination Framework

Plaintiff brings age discrimination claims pursuant to three separate statutes: the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq. ("RIFEPA"), and the Rhode Island Civil Rights Act of 1990, § 42-112-1, et seq. ("RICRA").   When a plaintiff brings indirect evidence of age discrimination, each of these statutes uses a version of the three-step burden-shifting framework that the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   See Lima, 17 F.4th at 207 (RICRA); Zabala-De Jesus v. Sanofi-Aventis Puerto Rico, Inc., 959 F.3d 423, 428 (1st Cir. 2020)

---

[5] Plaintiff has not argued that this information is admissible as statements of a party opponent or for reasons other than the truth of the matter asserted.  The Court considers these arguments waived.

(ADEA); Casey v. Town of Portsmouth, 861 A.2d 1032, 1036 (R.I. 2004) (RIFEPA).

First, a plaintiff must show a prima facie case of age discrimination. In the context of a reduction in force, "the plaintiff-employee must provide evidence from which a juror reasonably could find that: (1) he is at least forty years old; (2) his 'work was sufficient to meet the employer's legitimate expectations'; (3) his 'employer took adverse action against [him]'; and (4) 'either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action.'" Zabala-De Jesus, 959 F.3d at 428 (quoting Del Valle-Santana v. Servicios Legales De P.R., Inc., 804 F.3d 127, 129-30 (1st Cir. 2015)).

If the plaintiff makes this showing, the employer-defendant must provide a legitimate, non-discriminatory reason for the plaintiff's termination. Id. "If the defendant puts forth such a reason, then, at the third step of the inquiry, the burden of production shifts 'back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory.'" Id. (quoting Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010)).

While the burden-shifting framework is the same for all three statutes, the standard for assessing causation is not.  For an ADEA claim, at the third step, a plaintiff must show "that the age discrimination that the statute bars was the but-for cause of his termination."  Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)); see also Del Valle-Santana, 804 F.3d at 130 ("[P]laintiff is required to show that the employer's proffered reason is but a pretext, and 'that age was the but-for cause of the employer's adverse action.'") (quoting Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447–48 (1st Cir. 2009)).  A plaintiff suing under RIFEPA, however, must only show that age "was a motivating factor for [the unlawful] employment practice, even though the practice was also motivated by other factors."  R.I. Gen. Laws § 28-5-7.3; See also Drumm v. CVS Pharmacy, Inc., 701 F. Supp. 2d 200, 207 (D.R.I. 2010).[6]

In this case, these standards of causation make a critical difference.  As explained infra, Plaintiff has shown there is a material dispute of fact as to whether age was a "motivating factor" in his termination.  At the same time, there is insufficient evidence in the record for a reasonable jury to conclude that his age was the but-for cause of his termination. Thus, his RIFEPA claim survives, but his ADEA claim does not.

---

[6] As discussed further below, the proper causation standard for the RICRA is unsettled and unbriefed by the parties here.

11

C. Evidence of Discrimination

At the first step, Cotiviti contests whether Mr. Travers has made out a prima facie case at all. Def.'s Mem. Law in Supp. Mot. Summ. J. ("Def.'s Mem.") 9-10, ECF No. 29-1. While it concedes the first three elements (Plaintiff was over forty, generally meeting expectations, and fired), Cotiviti asserts he has failed to produce any evidence that it did not treat age neutrally. Id. Given the evidence discussed below, the Court assumes without deciding the low burden at the first step has been met. Because Cotiviti offers evidence that it fired Mr. Travers because of its declining need for his work and the shrinking revenues of his accounts, the Court moves directly to the third step of the inquiry. See Del Valle-Santana, 804 F.3d at130 (noting that district court assumed prima facie case, accepted legitimate reason, and moved directly to third-step pretext analysis). At the third step, the Court must determine whether plaintiff has "elucidate[d] specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (quoting Ray v. Ropes & Gray LLP, 799 F.3d 99, 113 (1st Cir. 2015)).

The gravamen of Plaintiff's complaint is that when the revenue from his accounts diminished, Cotiviti did not offer to transfer

12

him to an open position in the company, and that it made this decision because of his age. Pl.'s Obj 3-4. Plaintiff points to four pieces of evidence to support his claim that Cotiviti's stated reason is pretext hiding a discriminatory motive: (1) the variance from a purported policy of transfers for Audit Managers and Directors; (2) Mr. Weiser's decision to transfer three older members of his team to a different region; (3) statements made by Mr. Weiser while firing the Plaintiff; and (4) testimony from Plaintiff's former boss that there was pressure from senior leadership at Cotiviti to "get younger." Id. at 8-11. The Court reviews each in turn, in the light most favorable to Mr. Travers.

First, Plaintiff argues pretext is shown by Mr. Weiser's departure from a purported policy at Cotiviti of transferring Audit Managers and Directors instead of firing them. See id. at 9. As Defendant points out, there is no affirmative requirement that Mr. Travers' employer offer him a transfer when the company is reducing its workforce. See Def.'s Mem. 13; Webber v. Int'l Paper Co., 417 F.3d 229, 240 (1st Cir. 2005) ("[A]n employer undertaking a [reduction-in-force] is not required to offer an employee a transfer to another job position[.]") (collecting cases). Even so, a company must treat age neutrally; if it offers transfers regularly, it may not decline to do so in a particular case because of an employee's age.

13

Yet the connection to his age is precisely where Mr. Travers'
evidence falls apart.  In his effort to establish Cotiviti had a
practice of transferring Audit Managers and Directors, he points
to ten individuals who were allegedly offered transfers in lieu of
termination.[7]  Pl.'s Obj. 3-4, 9.  Regardless of whether these
individuals were actually in a similar position to Mr. Travers,
all ten are within his protected class (over 40), and seven are
older than him.  Def.'s SUF ¶ 36.  This evidence undercuts
Plaintiff's claim that age was the real reason he was not offered
a transfer, and declining revenues a mere pretext.  Even if
Cotiviti did have a policy of transfers, and even if it did apply
it to these ten employees, both of which are disputed, Cotiviti
clearly did not have a problem dispensing transfers to older
workers.  Plaintiff's own evidence shows it did so regularly.  If
it did not do so in Mr. Travers' case, this evidence does not
suggest age was the reason.

Second, Mr. Travers points to the fate of his team to support
his claim that Mr. Weiser held a discriminatory animus against
older employees.  Pl.'s Obj. 10-11.  Shortly after his firing, the

---

[7] As noted above, it remains disputed whether these ten
individuals were actually in a comparable situation to Mr. Travers.
Cotiviti contends that at least two of them were not transferred
at all, but rather that they retired.  See Def.'s Response Pl.'s
Statement Undisp. Facts 7-8, ECF No. 42.  The others, Defendant
argues, were not transferred due to declining work, but because of
mergers within Cotiviti's clients or performance issues.  See
Id. 3-10.

three older members (ages 62, 65, and 66) were transferred to
Charlotte, North Carolina, while the two younger team members (ages
26, 34) remained under Mr. Weiser's supervision.  Def.'s SUF ¶ 40.
But this is not the full story.  It is undisputed that these
transfers were for a temporary assignment, and all three returned
to Mr. Weiser's region when that assignment was completed, some
within a few months.  Id. ¶¶ 43, 49-51.  Eventually, the entire
team, younger and older employees alike, either retired or were
fired as part of a reduction in force.  Def.'s Resp. Pl.'s
Statement Additional Undisp. Facts, Ex. A., Dep. of Joshua Weiser
at 31.  This evidence therefore also fails to support Mr. Travers'
claim that Mr. Weiser held or acted on an age-based discriminatory
animus.

Third, Mr. Travers argues that during their conversation in
the CVS cafeteria, Mr. Weiser reacted poorly to insinuations that
Mr. Travers intended to file an age discrimination lawsuit and
that he failed to relay this complaint to human resources.[8]  Pl.'s

---

[8] Plaintiff's late-entered claim that the dynamics of this
conversation amounted to retaliation must be disregarded, as both
procedurally untimely and substantively meritless.  See Pl.'s Obj.
12-15.  A plaintiff may not suddenly bring a new claim in an
opposition to a motion for summary judgment, and here, the
retaliation claim is absent from the Complaint and the Rule 16
filings.  See Calvi v. Knox Cty., 470 F.3d 422, 431 (1st Cir. 2006)
(holding that a plaintiff may not "raise new and unadvertised
theories of liability for the first time in opposition to a motion
for summary judgment").  Furthermore, mere proximity in time
between Plaintiff's insinuations of discrimination and Mr.
Weiser's Statement that a transfer was not going to work out does

Obj. 9, 10.   Even in the more detailed version alleged by
Plaintiff, Mr. Weiser's response, "Others will be interested in
that, too," was ambiguous at best.  See Pl.'s SAUF ¶ 72.  "Isolated,
ambiguous remarks are insufficient, by themselves, to prove
discriminatory intent[.]"  Zabala-De Jesus, 959 F.3d at 430; see
also Paul, 948 F.3d at 54.

Finally, Plaintiff points to testimony from his former
manager, Jeffery Goldsmith, that there was an overall effort at
Cotiviti to "get younger."  Pl.'s Obj. 6, 11.  Most concerningly,
Mr. Goldsmith testified as follows:

> Q: Mr. Goldsmith, if you recall, was the company
> displacing older employees with kids straight out of
> college?
> A: We were getting rid of older employees and hiring
> kids from college, yes.

Pl.'s SAUF, Ex. F, Goldsmith Dep. 11, ECF No. 35-6.  When pressed,
Mr. Goldsmith backed away from this formulation.  See id. at 13
("It was never put exactly that way [displacing older employees in
favor of hiring kids right out of college], but my objectives were
to get younger."); id. at 14 (same).

Defendant claims Plaintiff and Mr. Goldsmith misunderstand
its objectives.  See Def.'s Reply Pl.'s Obj. Def.'s Mot. Summ. J.
19-22 ("Def.'s Reply"), ECF No. 38.  It explains that in order to

_____

not show a causal connection as required for a retaliation.  See
Pl.'s SAUF ¶¶ 62.  By Plaintiff's own account, Mr. Weiser denied
Plaintiff's request to transfer before Plaintiff brought age into
the conversation.  See id.¶¶ 62-72.

increase the company's profit margins and remain competitive, it was focusing recruitment efforts on inexperienced, entry-level employees, whom it could pay at a lower rate. Id. at 19, 21. Rather than an effort to replace older workers, this would allow the company's more experienced auditors to focus on more complicated work, commensurate with their experience, expertise, and higher salaries. Id. at 21.

Even taking this testimony in the light most favorable to Mr. Travers, it does not follow that age was the but-for cause of the decision to fire him in lieu of transfer. Mr. Weiser, not Mr. Goldsmith, fired Plaintiff, and Plaintiff has identified no evidence in the record that Mr. Weiser would have offered him a transfer, but-for this pressure "get younger." Rather, Mr. Weiser testified that he had never offered a transfer to any employee, no matter their age. Def.'s Reply, Ex. A, Weiser Dep. at 88, ECF No. 38-1. And the youngest members of Mr. Travers team, ages 26 and 34, also eventually lost their jobs, along with their older colleagues, due to declining revenues. Id. at 31. Additionally, a company basing decisions on factors that correlate with age, but which are nonetheless "analytically distinct," like salary or years of service, does not violate the ADEA. See Bramble v. Am. Postal Workers Union, AFL-CIO Providence Loc., 135 F.3d 21, 26 (1st Cir. 1998) ("[A]ge and years of service are analytically distinct, an employer can take account of one while ignoring the

17

other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'")(quoting Hazen Paper v. Biggins, 507 U.S. 604, 611 (1993)).  Thus Mr. Goldsmith's testimony, even when combined with Plaintiff's other evidence, is insufficient to create a triable dispute of fact as to whether the reasons given for Mr. Travers' termination were pretext and discrimination its real, but-for cause.  For this reason, Mr. Travers' claims under the ADEA must fail.

However, a reasonable jury could draw from Mr. Goldsmith's testimony that there was a company-wide push within Cotiviti to replace older employees with younger ones.  Plaintiff is entitled to the reasonable inference that Mr. Weiser was subject to that pressure too.  Given the directness of Mr. Goldsmith's statement, "[w]e were getting rid of older employees and hiring kids from college, yes," the Court concludes that a reasonable jury could find that Mr. Traver's age was a motivating factor in the decision to refuse his transfer request, even if no reasonable jury could find it was the but-for cause of that decision.  See Pl.'s SAUF, Ex. F, Goldsmith Dep. 11.  His claim therefore clears the lower bar for mixed-motive causation permitted by the RIFEPA.  See R.I. Gen. Laws § 28-5-7.3.  Summary judgment is GRANTED for Count I and DENIED for Count II.

D.  Solicitation of Further Briefing

Unlike the ADEA and the RIFEPA, the standard of causation for RICRA claims appears to be unsettled.  Neither the statute's text, nor any decision of the Rhode Island Supreme Court reviewed by this Court, nor the parties' briefing has directly addressed the question.

In this circumstance, the Court's duty is clear: "[w]here, as here, a state's highest court has not spoken on a matter of state substantive law, a federal court sitting in diversity must 'ascertain the rule the state court would most likely follow under the circumstances, even if [its] independent judgment on the question might differ.'" Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir. 2004) (quoting Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir.1996)).  It "may seek guidance from a wide range of sources, including but not limited to 'analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law.'" Id. (quoting Blinzler, 81 F.3d at 1151).

The Rhode Island Supreme Court generally "analyzes RICRA claims using substantive federal law from analogous causes of action." Ryder v. Pearson Educ., Inc., 486 F. Supp. 3d 489, 502 (D.R.I. 2020); see also Rathbun, 361 F.3d at 72 (noting the Rhode Island Supreme Court's "habitual pattern [is to] look to the

19

closest federal analogue"). The difficulty in the question here lies in ascertaining which analogous statute the Rhode Island Supreme Court would look to in this case. The ADEA, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, and the RIFEPA[9] are all reasonable choices.

On the one hand, § 1981 and the ADEA have a certain logic as analogues. Afterall, § 1981 served as an explicit model for the drafters of RICRA, see Rathbun, 361 F.3d at 67, and the ADEA, unlike Title VII, prohibits the age discrimination alleged in this case. Both require showings of but-for causation. See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020)(§ 1981); Gross, 557 U.S. at 176–77 (ADEA).

On the other hand, the Rhode Island Supreme Court has noted a special connection between RICRA and RIFEPA in the employment context. See Horn v. S. Union Co., 927 A.2d 292, 294 (R.I. 2007) (holding that "with respect to employment discrimination claims, the FEPA and the RICRA are in pari materia" and generally read together). And for claims of discrimination based on race and gender, there is a well-established practice of treating Title VII, the RIFEPA, and RICRA as analytically identical. See e.g., Harris v. City of Providence, No. 19-548-JJM-PAS, 2022 WL 540588,

---

[9] While the Rhode Island Supreme Court generally looks to federal analogues to interpret the RICRA, it has also noted a close connection between the RICRA and RIFEPA in the employment context. See Horn v. S. Union Co., 927 A.2d 292, 294 (R.I. 2007).

at *2 (D.R.I. Feb. 23, 2022); <u>Caesar v. AAA Ne.</u>, No. 17-cv-00130-S-PAS, 2021 WL 1820311, at *8 (D.R.I. May 6, 2021), <u>report and recommendation adopted</u>, No. CV 17-130 WES, 2021 WL 2043117 (D.R.I. May 21, 2021)("The Court will analyze the Title VII, FEPA, and RICRA actions together, using the Title VII framework.").

Faced with this open question, the Court defers judgment on Mr. Travers' RICRA claim. It requests additional briefing from the parties on the following question:

> For disparate treatment age discrimination claims in the employment context, does the RICRA require a but-for showing of causation (like the ADEA and § 1981), or does it permit a mixed-motive analysis, requiring a plaintiff to show that age was but one motivating factor amongst others (as for Title VII cases and the RIFEPA)?

Any briefs the parties wish to file will be due thirty days after the entry of this order.

IV. CONCLUSION

On careful review of the record, the Court concludes Mr. Travers has failed to demonstrate that there is a genuine dispute of material fact as to whether age was the but-for cause that he was fired instead of transferred. He has however, offered sufficient admissible evidence to permit a jury to find that his age was a motivating factor in this decision. Therefore, Defendant's Motion for Summary Judgment, ECF No. 29, is GRANTED as to Count I, and DENIED as to Count II. As to Count III, the Court

defers judgment and will await further briefing as to the causation
standard appropriate to a claim under the RICRA.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  March 21, 2022